## M. D. HALL, ET AL. *v.* TRUSTEES OF HARRODSBURG.

[Abstract Kentucky Law Reporter, Vol. 4—887.]

**Unequal Taxation to Aid Railroad.**

While the principle of equality as far as practicable must be the rule in taxation, yet the law is not unconstitutional for violating this rule which provides that when a municipality should take stock in the railroad to extend from Harrodsburg to connect with the Cincinnati Southern Railroad, any citizen of such municipality who subscribed for such stock should have the amount of such subscription credited on the taxes raised by such municipality to meet its subscription.

### APPEAL FROM MERCER CIRCUIT COURT.

April 12, 1883.

OPINION BY JUDGE PRYOR:

The sixth section of the act incorporating the Southwestern Railroad Co. provided "That all persons, companies, and corporations who subscribe for stock in said company, and who reside at the time of their subscription in any town, city, county, precinct, or other territorial district, which may thereafter subscribe and tax itself, or which has theretofore subscribed and taxed itself by virtue of the provisions of this charter, in aid of said road, shall, upon all tax assessed against such subscriber, be credited by the amount he has subscribed to the extent he has paid his individual subscription, which shall be done by the president drawing an order to the tax collector directing a delivery of the tax receipt; for which orders, so drawn, said collector shall receive credit, but not commission, when taken in by him from such subscriber, but from no one else: Provided, however, that said orders shall not be received in payment of any one's tax except the person actually making the subscription." 1 Acts 1876, ch. 171. This contemplated road was to begin at some point on the Cincinnati Southern road and connect with the Louisville & Nashville road near Lebanon. The road was constructed as far as the town of Harrodsburg and is now in operation from that town to the Cincinnati Southern.

A vote was had under the provisions of the charter by the qualified voters of Harrodsburg and the sum of $20,000 taken by the town as

stock in the road, and bonds issued for the payment of the stock, these bonds to be paid by the levy of a tax on the taxable property of those within the town boundary. The submission of the question to the people, the vote and the subscription of stock, and the issuing of the bonds was all done in accordance with the charter; and the only question necessary to be considered arises from the sixth section of the act already cited, the appellants maintaining that it is unconstitutional for the reason that it permits those who subscribed stock to be credited by the amount of their paid subscription in the sum for which their property is assessed for taxation. This entire question was submitted to the popular vote with the provisions of the charter before the voter that he might inform himself as to the character of the burden he was asked to assume. This charter constitutes the consideration for the making of the subscription and the imposition of the taxes and is the basis of the contract between all the parties.

The inequality in the mode of taxation or its payment that appellants complain of was intended to be avoided by the very section that it is now contended produces it. Some of the citizens of the town had subscribed and others were willing to subscribe a much larger sum than these individual taxes amounted to under the provisions of the charter; and the citizen being unwilling to pay his subscription and also the tax imposed upon him, in order to equalize the burden was credited on the tax bill, with any amount he paid on the subscription, and in this manner that which was equivalent to a double taxation was avoided. This was an enterprise benefiting the particular locality in which the vote was taken. It was a common burden that all must assume in proportion to the taxable property owned by each voter, and the taxation imposed not being sufficient to build the road many of the citizens were willing to subscribe more (and some of the subscriptions had already been made) than the amount of their taxes in order that this common enterprise might prove a success. The vote was almost unanimous, and the road placed in running order from Harrodsburg to the Cincinnati Southern. Taxes had been collected and paid for nearly two years, and some of those who are now enjoying the benefits are not disposed to share the burden. All the taxpayers are entitled to certificates of stock for the amount of taxes paid, but as an evidence of inequality it is urged that some of the taxpayers may not be entitled to as much

as one share of stock, their taxes not amounting to as much as $100, and therefore will not be entitled to vote for officers of the road, while the shareholder will be. This objection would apply to almost every charter, as the act of incorporation in most instances fixes the amount of stock that a party must have before he is entitled to a vote in selecting officers to control the affairs of the corporation; and besides there is nothing in this record showing that either of the parties complaining would be deprived of a voice in the selection of officers; and if it did we see nothing in the objection made. Such inequalities will necessarily exist in all such subscriptions, and to hold a charter unconstitutional because there are fractional shares would be carrying this doctrine of equality to an unwarranted extent, and particularly for the relief of those who are now in the enjoyment of the benefits resulting from the improvement. The cases of *City of Lexington v. McQuillan*, 9 Dana (Ky.) 513; and *Marshall v. Donovan*, 10 Bush (Ky.) 681, and various others relied on by the appellants, only decide that a common burden must be assessed by common contributions, in other words, the principle of equality as far as practicable must be the rule; and we have been unable to see any departure from the rule in this case.

The judgment below is therefore *affirmed*.

*Durham & Jacobs, J. C. Thompson & Poston, for appellants.*

*M. C. Johnson, Bell & Wilson, for appellees.*